IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:05cr355 |
| | ) | |
| FRANKLIN JOSE CROUNSSET | ) | |

**MEMORANDUM OPINION**

In this criminal bench trial, a motion for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P. raises questions regarding the sufficiency of the charging language of the indictment and the government's burden of proof necessary to obtain a conviction for aggravated identity theft in violation of 18 U.S.C. § 1028A.

**I.**[1]

The record reflects that on July 11, 2005, defendant, traveling under the name Sandy Garcia, arrived at Washington Dulles International Airport aboard flight 846 from Buenos Aires, Argentina. Upon his arrival at Dulles, defendant presented an altered Dominican Republic passport to Officer Jorge Comas of the United States Customs and Border Protection (CBP), a division of the Department of Homeland Security. A cursory review of this passport revealed that it contained defendant's photograph, the name Sandy Garcia, a date of birth of July 4, 1978, and a temporary green card stamp bearing Alien Registration Receipt Number (A number) 46548133. As it happens, this is the A number assigned to an individual identified as Sandy Garcia in the government's

---

[1] The facts recited here are derived from the testimony and evidence presented in the course of the one-day bench trial held on September 7, 2005, viewed in the light most favorable to the government, as required on a motion for a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1 (1978); *United States v. Sawyer,* 294 F.2d 24, 31 (4th Cir.), *cert. denied,* 368 U.S. 916 (1961).

computerized Image Storage and Retrieval System (ISRS). This individual is not the defendant.

After reviewing defendant's passport, Officer Comas directed defendant to the airport's passport control secondary inspection area. This referral was made for two distinct reasons, namely (i) a one-day "lookout" had been placed on the name Sandy Garcia by law enforcement authorities,[2] and (ii) temporary green card stamps such as the one observed in defendant's passport typically lead to referrals to the secondary inspection area by CBP officials.

Once in the secondary inspection area, defendant was questioned by CBP Enforcement Officer Kevin Ho. During the course of the secondary inspection interview, defendant advised Officer Ho, among other things, (i) that his name was Sandy Garcia, (ii) that he had obtained his original green card and legal residency status in New York City in approximately December 1997, (iii) that he had been outside the United States for approximately two months prior to his arrival at Dulles on that date, and (iv) that he had received the temporary green card stamp contained in his passport in New York City on June 2, 2005, the previous month.[3]

Like Officer Comas, Officer Ho examined the passport that had been presented by defendant upon his arrival at the airport and observed that the passport displayed, *inter alia*, a right thumbprint

---

[2] A "lookout" generally alerts the passport control primary officer to be aware that a particular individual may have a possible immigration or criminal violation in the United States. In this instance, two lookouts were placed on the name Sandy Garcia, the first being a one-day lookout based on the perceived irregularity of a Dominican citizen traveling from Buenos Aires to Dulles, as reflected in defendant's flight itinerary. The second, more general lookout was based on the fact that a previous immigration violation included in the government's records suggested that possible imposters were using the name Sandy Garcia and his corresponding birth date and A number.

[3] This last statement obviously aroused Officer Ho's suspicion, as it was inconsistent with defendant's contemporaneous statement that he had been outside the United States for the past two months.

and a place of birth of Santo Domingo. Defendant was then directed to provide a fingerprint of his right index finger. Officer Ho then visually compared that fingerprint to the fingerprint contained on record in the government's ISRS as belonging to Sandy Garcia and confirmed that the prints did not match. At that point, Officer Ho presented defendant with a photograph of the individual identified as Sandy Garcia in the ISRS and asked defendant if he knew the individual portrayed in the photograph. Defendant responded that he did not.

When defendant continued to assert that he was Sandy Garcia despite the government's information to the contrary, he was escorted to another room in the airport and directed to provide an electronic fingerprint. This fingerprint was then sent electronically to the Federal Bureau of Investigation and was promptly returned as a positive hit, revealing a true photograph of the defendant and the name Franklin Jose Crounsset. The FBI information also revealed that defendant, a citizen of the Dominican Republic, was assigned A number 77046489 — a number different from the one contained in the passport defendant presented to airport officials on that occasion.

A subsequent review of defendant's true immigration records revealed that he had been removed from the United States on two prior occasions, initially on March 30, 2001, and subsequently on April 13, 2005.[4] Moreover, the order of removal that resulted in defendant's April 13, 2005 departure prohibited him from re-entering the United States without permission for a period of 20 years. In this regard, it is undisputed that defendant did not apply for or obtain a waiver from the Secretary of the Department of Homeland Security granting him permission to enter the United States prior to his arrival at Dulles on July 11, 2005.

---

[4] It further appears that defendant was ordered removed from the United States a third time, on June 25, 2003, but apparently was not actually deported on this occasion.

Following an initial appearance before a magistrate judge on July 11, 2005, defendant appeared for a detention hearing and was remanded to the custody of the United States Marshal's Service pending trial. Thereafter, on August 4, 2005, a federal grand jury returned a three-count indictment against the defendant charging him with (i) being a deported or removed alien who was found in the United States without having obtained the express consent of the Secretary of the Department of Homeland Security for re-application for admission, in violation of 8 U.S.C. § 1326(a), as modified by 6 U.S.C. §§ 202(3) and (4), 542(d) and 557 (Count One); (ii) possessing a means of identification of another person during and in relation to a violation of 8 U.S.C. § 1326(a), in violation of 18 U.S.C. § 1028A(a)(1) and (c)(10) (Count Two); and (iii) using and attempting to use an altered passport to gain entry into the United States, in violation of 18 U.S.C. § 1543 (Count Three). An arraignment hearing was held on August 18, 2005, in the course of which defendant waived formal reading of the indictment, pled not guilty to the charged offenses and waived his right to a trial by jury.

Prior to commencing the bench trial on September 7, 2005, the government, by counsel, moved orally to dismiss Count One of the indictment based on an apparent charging error, as the indictment charged defendant with being "found" in the United States, rather than with attempting to enter the United States, two distinct substantive offenses proscribed by 8 U.S.C. § 1326(a). Defendant opposed this motion and a ruling was deferred pending the filing of a motion for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P. The government thereafter presented its case in chief against defendant, consisting of various exhibits and the testimony of four individuals, namely (i) Officer Ho, (ii) Officer Comas, (iii) Donna Eisenberg, a forensic document examiner, and (iv) Genius Johnson, a fingerprint specialist.

At the conclusion of the government's case in chief, defendant moved for a judgment of acquittal on Counts One and Two of the indictment. Following the arguments of counsel, defendant's motion was granted with respect to Count One in light of the fact that he had not been "found" in the United States on July 11, 2005, as specifically charged in the indictment.[5] To the contrary, the record evidence established only that defendant had <u>attempted to enter</u> the United States on that date, a separate and distinct crime proscribed by 8 U.S.C. § 1326(a).[6] Defendant's motion for a judgment of acquittal was taken under advisement as to Count Two. Additionally, defendant was found guilty on Count Three of the indictment, as the government established beyond a reasonable doubt that defendant had used an altered passport in an attempt to gain entry into the United States on July 11, 2005, in violation of 18 U.S.C. § 1543.

---

[5] It is clear that an alien who presents himself to immigration officials at a border entry point, as occurred here, has not been "found" in the United States as contemplated by the statute. *See United States v. Zavala-Mendez*, 411 F.3d 1116 (9th Cir 2005) (providing that "[a]n alien who crosses the border at a designated location and proceeds directly in the manner designated by the government to the border station where he then presents himself to the authorities has not been 'found in' the United States for the purposes of 8 U.S.C. § 1326(a)"); *United States v. Angeles-Mascote*, 206 F.3d 529, 531 (5th Cir. 2000) (holding that when a defendant "voluntarily approached the immigration officer at [the airport]...it cannot be said that he was discovered in or found in the United States"); *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991) (recognizing that "[a]ny party who voluntarily approaches an INS station cannot be said to have been found or discovered in the United States").

[6] To be sure, the unlawful reentry statute — 8 U.S.C. § 1326 — imposes criminal liability in three distinct situations, namely where a deported alien either (i) enters the United States, (ii) attempts to enter the United States, or (iii) is found in the United States. *See* 8 U.S.C. § 1326(a); *United States v. Rosales-Garay*, 283 F.3d 1200, 1202 (10th Cir. 2002) (recognizing that "[t]he plain language of § 1326(a) establishes that a previously deported alien who illegally enters and remains in the United States can violate the statute at three different points in time, namely, when the alien (1) 'enters,' (2) 'attempts to enter,' or (3) is at any time 'found in' the United States"); *United States v. Corrales-Beltran*, 192 F.3d 1311, 1320 (9th Cir. 1999) (stating that "[e]very other circuit that has considered whether § 1326 contemplates three distinct substantive offenses has concluded that it does").

At the conclusion of the bench trial, the parties were directed to submit supplemental briefs with respect to three discrete issues pertaining to Count Two of the indictment, charging the defendant with possessing a means of identification of another person during and in relation to a violation of 8 U.S.C. § 1326(a), in violation of 18 U.S.C. § 1028A(a)(1) and (c)(10). Specifically, the parties were directed to address in simultaneously submitted briefs (i) whether the judgment of acquittal on Count One of the indictment precludes a conviction on Count Two, (ii) whether the government established beyond a reasonable doubt that Sandy Garcia is a real person as required by the charging statute, and (iii) whether the charging statute requires the government to prove beyond a reasonable doubt that defendant knew that the fraudulent passport he was using belonged to a real person, or simply that he knew that the passport was fraudulent. The parties, by counsel, subsequently filed their supplemental briefs on the remaining issues and oral argument was heard on September 19, 2005. An additional hearing was later held on October 17, 2005, in the course of which defendant's Rule 29 motion for a judgment of acquittal on Count Two was denied orally from the Bench and defendant was found guilty of the charged offense. Recorded here are the reasons underlying that ruling.

## II.

Under Rule 29(a), Fed. R. Crim. P., a district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient." Rule 29(a), Fed. R. Crim. P. When reviewing the sufficiency of the evidence for purposes of a Rule 29 motion, courts must examine whether any reasonable juror could find all of the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 (1979); *Glasser v. United States*, 315 U.S. 60, 80 (1942). In other words, the question raised by a motion for a judgment of acquittal is whether "as matter of law the

6

government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986)). Thus, to avoid a Rule 29 judgment of acquittal, the government must have presented sufficient evidence to support a conviction based on reasonable inferences, as the fact finder is not entitled to make "leaps of logic." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 1994). Reasonable inferences in this regard are those that may be drawn from the evidence, viewed in the light most favorable to the government, but without resort to speculation. *See Kincaide v. U.S. Elec. Motors, Inc.*, 219 F.3d 800, 802 (8th Cir. 2000); *United States v. Sawyer,* 294 F.2d 24, 31 (4th Cir.), *cert. denied,* 368 U.S. 916 (1961).

### III.

The threshold question is whether the judgment of acquittal on Count One of the indictment, which unsuccessfully charged defendant with being "found" in the United States in violation of 8 U.S.C. § 1326(a), requires a judgment of acquittal on Count Two. As previously noted, Count Two charges that defendant committed aggravated identity theft in violation of 18 U.S.C. § 1028A by knowingly possessing and using a means of identification of another person during and in relation to "a violation of 8 U.S.C. § 1326(a), to wit, unlawful reentry after deportation." Significantly, the charging language of Count Two does not reference which of the three distinct substantive offenses proscribed by § 1326(a) is relied upon as the predicate violation underlying the § 1028A charge of aggravated identity theft. This lack of specificity raises the question as to the language required to allege a predicate "felony violation" under § 1028A and whether the instant indictment sufficiently alleges — and the government proven beyond a reasonable doubt — a predicate violation with respect to Count Two.

Pertinent to the analysis of this question are several general principles underlying the purpose and scope of a criminal indictment. To begin, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to be a "plain, concise and definite written statement of the essential facts constituting the offense charged." *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979) (citing Rule 7(c)(1), Fed. R. Crim. P.). Rule 7 therefore requires the indictment to include all of the essential elements of the offense charged, together with sufficient additional facts to allow the indictment to be used as proof to bar a subsequent prosecution for the same offense. *Id.* Put differently, an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[7] It is also clear that a defendant may be tried only on charges specifically alleged in an indictment and only "the grand jury may broaden or alter the charges in the indictment." *United States v. Bolden*, 325 F.3d 471, 493 (4th Cir. 2003) (citing *United States v. Randall*, 171 F.3d 195, 203 (4th Cir.1999)). Thus, an indictment is constructively amended "when the essential elements of the offense ... are altered to broaden the possible bases for conviction beyond what is contained in the indictment."[8] Such constructive amendments are presumptively prejudicial in the Fourth Circuit. *See Floresca*, 38 F.3d

---

[7] *United States v. Quinn*, 359 F.3d 666, 672-73 (4th Cir. 2004) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Daniels*, 973 F.3d 272, 274 (4th Cir. 1992) (recognizing that "[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense").

[8] *Bolden*, 325 F.3d at 493 (citations omitted); *see also United States v. Floresca*, 38 F.3d 706, 710 (4th Cir.1994) (recognizing that "[a] constructive amendment to an indictment occurs when either the government, [the court], or both, broadens the possible bases for conviction beyond those presented by the grand jury").

at 711. All of these general principles inform the analysis of Count Two.

Count Two expressly charges defendant with a violation of 18 U.S.C. § 1028A, the aggravated identity theft statute. That statute provides, in pertinent part, that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall...be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). The specific predicate felony violation relied on by the government in Count Two is 8 U.S.C. § 1326(a), illegal reentry of a deported alien. Indeed, the enumerated predicate offenses necessary to establish a violation of § 1028A include a violation of "any provision contained in Chapter 8 of title II of the Immigration and Nationality Act (8 U.S.C. 1321 et seq.) (relating to various immigration offenses)," which necessarily includes a violation of § 1326(a). 18 U.S.C. § 1028A(c)(10).[9]

Unlike Count One, which specifically charged defendant with only one of the three distinct offenses contained in 8 U.S.C. § 1326(a) — namely being "found" in the United States — Count Two charges that defendant committed aggravated identity theft by using a fraudulent passport in connection with a violation of the illegal reentry statute, 8 U.S.C. § 1326(a).[10] By charging

---

[9] Although inexplicably not charged by the government in this instance, it should be noted that the offense on which defendant was charged and convicted in Count Three — use of an altered passport in an attempt to gain entry into the United States in violation of 18 U.S.C. § 1543 — was sufficient to serve as the underlying predicate felony violation under § 1028A. *See* 18 U.S.C. § 1028A(c)(7) (including a violation of "any provision contained in Chapter 75 (relating to passports and visas)" in the definition of "felony violation" under § 1028A).

[10] In this regard, Count Two charges defendant with

> knowingly possess[ing] and us[ing], without lawful authority, a
> means of identification of another person, to wit, a passport bearing
> the name, birth date, and alien registration receipt number of Sandy
> Garcia, a native of the Dominican Republic and a lawful

defendant in this manner, the government reserved the right to satisfy its burden with respect to Count Two by establishing beyond a reasonable doubt that defendant violated any of the three distinct offenses defined in § 1326(a), namely by (i) attempting to enter, (ii) entering, or (iii) being found in the United States. And here, the record evidence established beyond a reasonable doubt that defendant indeed attempted to enter the United States in violation of § 1326(a) on July 11, 2005, a finding that is sufficient to satisfy the predicate violation necessary for a conviction on Count Two.

Defendant's argument that this result amounts to a constructive amendment of the indictment is unpersuasive, as no alteration or broadening of the charging language is necessary to permit a conviction on Count Two. Significantly, Count Two does not mention, cross reference or incorporate the specific violation charged in Count One, which unsuccessfully charged defendant with having been "found" in the United States in violation of § 1326(a); it follows, therefore, that Count Two is not limited by the scope of the charge in Count One. Instead, Count Two is a separate and independent charge against the defendant and, by its express terms, charges defendant with using a fraudulent passport in connection with a violation of § 1326(a), which necessarily includes any of the three separate offenses proscribed by § 1326(a). It therefore cannot be said that the essential elements of the offense charged in Count Two have been "altered to broaden the possible bases for conviction beyond what is contained in the indictment" where, as here, the government is permitted to prove any one of these three distinct offenses to satisfy the predicate felony violation necessary for a conviction on Count Two. *Bolden*, 325 F.3d at 493.

Defendant's reliance on *United States v. Randall*, 171 F.3d 195 (4th Cir. 1999) in support of

---

permanent resident of the United States, during and in relation to a violation of Title 8, United States Code, Section 1326(a), to wit, unlawful reentry after deportation.

his constructive amendment argument is equally unpersuasive. There, the Fourth Circuit was faced with the question whether a defendant's conviction for using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) must be reversed where the government, through its presentation of evidence and its closing argument, and the district court, through its jury instructions, allowed proof of an alternative § 924(c) predicate offense not charged in the indictment. In concluding that a constructive amendment had occurred in *Randall*, the Fourth Circuit stated the following:

> In this case, even though the government was not required to specify on which § 924(c) predicate offense it was relying, because the government did indeed specify in the indictment that it was relying on the predicate offense of distribution, it was not allowed through the presentation of its evidence and its argument, and the district court was not allowed through its jury instructions, to broaden the bases of conviction to include the different § 924(c) predicate offense of possession with intent to distribute.

*Randall*, 171 F.3d at 210. Thus, *Randall* is easily plainly distinguished from this case. Unlike the conviction in *Randall*, a conviction on Count Two does not require an extension or broadening of the specific language charged in the indictment. Rather, the charging language in this instance was sufficient to "fairly inform" defendant that any of the three distinct offenses proscribed by § 1326(a) could be used to establish the predicate felony violation necessary for a conviction on Count Two. *Quinn*, 359 F.3d at 672-73.

**IV.**

But this does not end the analysis, for a violation of 18 U.S.C. § 1028A also requires the government to prove that defendant possessed or used without authority "a means of identification of another person." 18 U.S.C. § 1028A. Thus, to prove the offense charged in Count Two, the

11

government must establish beyond a reasonable doubt that the identifying information used by the defendant in this instance belongs to an actual individual. This follows from the plain language of the statute, as the term "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify <u>a specific individual</u>... ." 18 U.S.C. § 1028(d)(7) (emphasis added). This includes, for example, any "name, social security number, date of birth, official State or government issued driver's license or identification number, [or] alien registration number... ." *Id.*

     Here, defendant used an A number assigned by the United States government. This fact alone is sufficient to meet the government's burden on this point, as an A number is, by definition, a means of identification of an actual individual because "they are assigned to a single person and, once used, are not reassigned to anyone else." *United States v. Montejo*, 353 F. Supp. 26 643, 649 (E.D. Va. 2005); 18 U.S.C. § 1028(d)(7)(A) (defining "means of identification" as including alien registration numbers). But beyond this, the record evidence also confirms that defendant used the identifying information of an actual individual, as opposed to a fictitious one. In this regard, Officer Ho testified at trial that by using the A number included in the passport presented by defendant on July 11, 2005, he was able to pull up from the ISRS computer database the corresponding "A" file for Sandy Garcia. This computer file, in turn, contained the name, photograph, mother's name, date of birth and fingerprint impressions of a specific individual, namely Sandy Garcia. That "A" file also contained a fingerprint card that matched the fingerprint on an immigrant visa admitting an individual by the name of Sandy Garcia into the United States on December 6, 1997. There is nothing in the record to refute the documents and testimony establishing that the name and date of birth contained on Sandy Garcia's immigrant visa are genuine. Thus, in the circumstances, the

record evidence is sufficient to establish beyond a reasonable doubt that Sandy Garcia is indeed an actual person, as required for a § 1028A conviction on Count Two.

## V.

Finally, defendant attacks his conviction on Count Two by arguing that the government was required to prove that defendant knew that the fraudulent identification documents that he possessed belonged to an actual individual. In other words, defendant argues that the government was required, and failed, to prove that defendant knew Sandy Garcia was a real person. The short answer to this argument is that the statute imposes no such requirement on the government. The recent decision in *United States v. Montejo*, 353 F. Supp.2d 643 (E.D. Va. 2005) is persuasive on this issue.[11] There, the district court based its analysis on the plain language of the statute, as required under settled principles of statutory interpretation.[12]

In this regard, 18 U.S.C. § 1028A provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses or uses, without lawful authority a means of identification of another person shall...be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). In *Montejo*, the district court correctly recognized that "[s]ince the term 'knowingly' is immediately antecedent to the phrase 'transfers, possesses, or uses,' it must be read only to qualify those words." *Montejo*, 353 F. Supp. 2d at 648. Thus, the plain meaning of the statute "reveals that the mens rea requirement applies only to the conduct involved,"

---

[11] The *Montejo* decision is currently on appeal to the Fourth Circuit, with oral argument recently heard on October 28, 2005. *See United States v. Montejo*, No. 05-4143 (4th Cir. 2005).

[12] *See United States v. Simmons*, 247 F.3d 118, 122 (4th Cir. 2001) (recognizing that "[w]hen interpreting a statute, [a court's] inquiry begins with the text"); *United States v. Horton*, 321 F.3d 476, 479 (4th Cir. 2003) (stating that the plain meaning of a statute is ascertained by examining the statute's "language, structure, and purpose").

namely transferring, possessing or using, "and not to any other elements of the offense." *Id.* Put differently, to sustain a conviction under § 1028A, the government was required to prove simply that the defendant knew that the passport he presented to airport officials on July 11, 2005 was fraudulent. The government has clearly satisfied its burden in this regard. And, contrary to defendant's contentions, the statute does not require that the government prove, in addition, that defendant knew that the identifying information contained in the fraudulent passport belonged to an actual individual. To read § 1028A otherwise would effectively narrow the proscribed conduct to include an additional element not expressly required by the plain language of the statute and would impose on the government an often insurmountable burden.

Accordingly, for the foregoing reasons, defendant's motion for a judgment of acquittal on Count Two is properly denied. An appropriate Order has entered.

/s/
_____

Alexandria, VA  
November 21, 2005

T. S. Ellis, III  
United States District Judge